Okay, the next case on the docket today is Mid-America Development v. Illinois Department of Transportation Ann Schneider, Bill Cray, Cheryl Cathy, and Tim Hesley, 514-015-2. Ready to proceed? Okay, you may proceed. Mr. Petrie? Yes, Mr. Petrie. May it please the Court, I'm Chris Petrie of the firm of Byron, Carlson, Petrie & Cowell, and I represent the appellant, Mid-America Development, LLC. Mid-America applied for an outdoor advertising permit for a billboard with the Illinois Department of Transportation for a piece of property in unincorporated Madison County, Illinois, which was zoned commercial. The department denied Mid-America's application. Mid-America appealed the department's denial to the trial court, which affirmed the department, and this is an appeal of the denial. Just for a little background, Mid-America is a company that sells advertising space on billboards in southern Illinois. Mid-America desired to put up a billboard on an approximately 8.6 acre parcel located in unincorporated Madison County along Highway 255. The parcel was zoned commercial industrial in 1972, and it continues to have that zoning class today. The parcel is bisected by Highway 255. Mid-America's proposed location for the billboard would be on Route 255. It would be on one side of Route 255, and on the other side of 255 on this same parcel is a commercial building and an outdoor billboard. Mid-America obtained an easement from the parcel's landowner, granting it the right to use the portion of the parcel to put up the billboard, and Mid-America submitted an application and supporting documents to the department on or about April 2nd of 2012. The department issued a notice of intent to deny, which is not its final denial, but a notice of intent to deny on April 25th of 2012, but in that notice it provided Mid-America the opportunity to provide more supporting documentation. Mid-America submitted an appeal of that intent to deny and further documentation on May 24th of 2012. On June 14th, 2012, the department issued a notice of final denial of the permit application, and it stated two reasons for the final denial. One was it stated that the parcel was newly zoned, and if a parcel is newly zoned, then under the statutory scheme, the applicant has to jump through a lot of hoops in its application, including submitting things like a site plan approved by the local zoning authority. It also denied the application on the second round that the only plausible commercial or industrial use of the parcel is outdoor advertising. On or about July 13th, 2012, Mid-America filed a complaint for administrative review in the Madison County Court, and the petition was dismissed, resulting in this appeal. Fortunately, the department has waived one of the basics for its denial of the permit. It waived the first reason I talked about, that the parcel was newly zoned, and thus there had to be a site plan approved as part of the application process. It's waived that ground and admits that the parcel has been zoned commercial or industrial since 1972. So effectively, the department has denied the application on one basis, and that is its belief that the only plausible commercial or industrial use of the parcel is outdoor advertising. The standard review is a mixed question of law and facts, so the standard review is clear error, and I submit to you that this finding by the department is clearly erroneous for two straightforward reasons. First and foremost, the land is zoned commercial. This is a crucial fact that the department wants to adorn. It's well established that municipalities must consider the suitability of property for its zoning classification. That's the Lake Shore case that I cited in my brief. Thus, the government has reviewed this property and found it suitable for commercial use, yet the department is saying that its only plausible use is for a building. Obviously, that cannot be true in light of the zoning. Secondly, the parcel already has existing commercial development on it. As I stated before, on the other side of the highway, there's a commercial building that's built. So this shows the zoning board got it right. Someone found the property suitable for commercial use and has used it commercially. Given that the land has already been used commercially, it's clear error for the department to say that its only use is for a building. Now, against these straightforward arguments, the department just raises a few points. First, the department argues that the word land in the statute doesn't refer to the entire parcel of land, but only the land where the sign itself will be placed. Thus, the entire parcel's plausible use is irrelevant. So essentially, in the department's position, they're totally ignoring the parcel system, which is the way land is described, delineated, and taxed in Illinois. The word parcel does not really appear in 522.50, does it? Yeah, correct. It uses the word land. It uses the word land, which is concerning because what is the site plan designed to do? Is it designed to cover an entire parcel or a piece of a parcel? Well, I think a site plan could be designed to do either, Your Honor. In this case, I believe the supporting documentation showed where we were going to put the building. Right, but if you consider that this was one parcel and that a site plan had to be used, come up with. Well, the site plan only implies that we're in the newly zoned. Okay, so you're not newly zoned. They also conceded that you were spot zoned. Correct. So they made two concessions. I believe, yes, Your Honor. So the only thing you had to show is that it had no other possible commercial use. I believe that our burden is to show that it's plausible that it could be used commercially other than for a billboard. Okay, if I said that wrong, that was their position, that it only had a use as a billboard. Correct. And you had to counter that. Correct. That it could be used for other commercial purposes. Correct. And in that regard, you wanted to look at the other side of the highway. Correct. So my question is, why do we get to do that if the word parcel is not used in the regulation? Well, one of the reasons I said it, the word land is used in the regulation. So we have to have a meaning for land. And I believe parcel is the common way that land is delineated in the past. It's the common way of describing land. But even if we're going to distinguish between land and parcels, I still think that there's a problem with the Department's position. And what the Department is saying is the land just means the actual sign, the actual sign site. And, of course, if you define land, you just mean the actual sign site. The site of the sign may be no bigger than this table or a little bigger than this table. And so when we point that out to the Department in our briefing, what they will say then is, well, it's the size of this table plus the land over on this side of the highway, but not the land on that side of the highway. So they are basically drawing definitions of land in an ad hoc fashion. Our definition of land relies on the parcel system. And there's just simply – it's kind of like the Department can act whimsically or arbitrarily making up what the word land means. They can draw it essentially any way they want. But that being said, even if we use their artificial definition of land, the one that they come up with on an ad hoc basis, they say it's the sign site plus this but not that. Even if we give them that benefit, the finding is still clearly erroneous because it is still plausible that there could be commercial development on the other side of the highway. And the reason I say this is, one – Which side? The side with just your sign? The side just – the side where we – the side where we would apply for the sign, yes. It's plausible that there could be commercial development there because, one, the whole parcel is zone commercial. And so as I talked about, that means the government has looked at it and decided the land is suitable for commercial use. Two, someone has already built commercially on the parcel itself on the other side of the highway. And three, we have affidavits in the record from the landowner saying I will sell easements for commercial development. And so their whole position on this landlocked idea – and that's really what they're standing on – it's landlocked. Therefore, there is no plausible use of the property other than for a billboard is undermined by the record, by its zoning, by its use, and by the affidavit of the current landowner saying I'll sell easements for commercial development. He's already sold us an easement to erect the billboard. Well, if you have the road going through the – do they have an easement to get under the road? Yes, the current landowner has an easement to get under the highway. That's in the record, yes. Okay. And it's important. There's no evidence to the contrary. They certainly didn't go out and talk to any landowner and give any affidavit that says I have no interest in commercial development up there. That parcel will remain undeveloped for as long as I own the property. So, again, their standard here is a very difficult one. The only plausible use of the property is for a billboard. The only plausible use. If there are other plausible uses, even if they're not likely to occur, if they're plausible, then you cannot say that the only plausible use of the property is for a billboard. I would point out also that if the court believes that the department does have the authority, acted properly under the statute in making this mixed law and fact-finding, that I believe there are constitutional problems here. And one is that the statute would be void of forbiddance. To be unconstitutionally void is vague. A term must be so ill-defined that the ultimate decision as to its meaning rests on the opinions and the whims of the trier of fact. And whether a statute is void for vagueness must be decided on a case-by-case basis. In this case, if a parcel of land that is zoned commercial, which has commercial development on it, and even giving the department the ability to subdivide that land arbitrarily, it's not subdividing, it's one parcel, even giving them that benefit, if the owner of the land has put forth an affidavit saying, I will grant easements for commercial development, if that statute is interpreted in this case such that you could say that the only use of the land, the only plausible use of the land, is commercial development, then the statute is vague. Someone reading that would have no idea in this fact situation that they could not apply and receive a permit to put up a billboard. The same can be said of America's commercial free speech rights as well. Commercial free speech rights can be regulated because it's commercial speech, but the regulation has to be reasonably tailored to the interest of the government. And in this case, if we're going to interpret the word only plausible use to be a billboard, given this set of facts, then the statute is just sweeping into too much commercial speech, and it isn't reasonably tailored to the government's interest. That's all I have prepared for my opening remarks. I'll take any questions, and if there are none— How much land is on the alleged billboard side of the road? I'm sorry? How much land is parcel on that side? I think roughly half the acreage. I think it's roughly four acres, but I would have to double-check the exact— Well, that's close enough. —by section. Is it improved in any way? Is it farmed or anything like that? It is—it's uniform. It is in the same—and this is in the record—it is in the same condition of the land as the other side of the highway, except that it does not have the commercial development yet. So it is not improved in the sense that there are roads there and things like that yet. So it is landlocked, though? It is landlocked, but I would argue to you that when the—we're talking about a standard here where the only plausible use is for a billboard, and when we have commercial development on one side and we have it zoned commercial and we have the owner saying, yeah, I would grant commercial—I would grant access easements, that while it may be landlocked in the sense that there's no exit off of 255 now— No, I mean from any road. Well, from any road. Yes, from any road. That's correct. The current landlord has not built a road on the 255. No, I understand. But on the side that the property is located, it is landlocked from any other road. Correct. At this point, it is. Yes, it is. And it's only a half acre. I think it's four acres. Four acres? I think—I have to double-check the exact by section, but I believe about half of the parcel is on one side of Highway 255 and about half is on the other side of 255. I will reserve further argument until my reply time then. Hi. Let me ask first, is it true that the state has conceded that this is not a case about spot zoning or newly zoning? Yes, ma'am. That's correct. So we're talking about the criteria that the state believes that the only plausible commercial or industrial use of the land is for outdoor advertising. That's correct. Okay, thank you. Good morning. Good morning. May it please the Court. I am Assistant Attorney General Steven Sultanzadeh on behalf of the Department of Transportation and the remaining defendants. The standard of review here is clear error. The Department's decision was based on the record. It's consistent with the Act. It's consistent with the regulations. And it was not clearly erroneous. Nothing in the record here indicates that commercial or industrial use was plausible on this piece of land. There's no infrastructure at this site. There were no utilities at this site. There's no plan for development. There's no study or any other evidence like that suggesting that development there was even possible. Don't you think this is pretty high burden for the state to meet? I mean, you're talking about a burden that says the only plausible commercial or industrial use ever, right? There's no time limitation? That's true, Your Honor. I mean, I think the term plausible has built in within it some limitation. I mean, they could have used the word hypothetical. They did not. Hypothetical? In other words, by using the term plausible, it's asking some realistic basis for believing that commercial or industrial development can occur on the site. Well, you have it on the other side of the road on the same parcel. That's true, Your Honor. Did the state consider that? The state did consider it. I mean, there's no reason to believe the department didn't consider everything that was submitted to it. Why did the department, if they did, split this into two parcels, two pieces? Your Honor, I believe it's a mischaracterization to say that they split the parcel. What they did is they looked at the proposal for the site. They looked at where the application said they want to build a sign. They looked at the land in that particular spot and said, does this land have plausible commercial or industrial development? Is it plausible that development will occur here? The parcel really wasn't relevant to the department's decision because the regulations don't guide the department to look at a parcel. The regulations guide the department to look at where is this sign going to go. The department looked. They said, okay, there's no other development here. The land is landlocked. There are no utilities. There's no plan. There's no one saying they're going to develop this land. Well, when you say no utilities, I just heard that they had an easement under the highway to put utilities if they wanted to. Well, I'm not sure the easement is that specific. So there are two things here. There's one actual easement for the sign itself. Then there was some evidence in the record. There was one affidavit saying that Mid-America had spoken with the landowner who said they'd be willing to grant an easement. But there's certainly no contract in place for that type of easement. And there is no easement with specificity saying utilities can be run here, there can be a road on the land, that certain types of development can occur. Really, we have nothing here but a pristine, untouched piece of land. Pristine? Well, it's pristine in the sense that it's entirely undeveloped. If you look on that side of the highway, there's no development here anywhere on this piece of land. And that's denying a permit under these circumstances. Is that a flat piece of land like the judge asked? Is it farmable? Is it all trees, woods? Do you know? It's not entirely clear from the record, Your Honor. So does 255 have a utility easement that runs along it? There's no utility easement in the record. There's one easement in the record, and that was an easement to put up this sign at this proposed site. So why is it zoned commercial as opposed to agricultural? Well, it was zoned for commercial or industrial use, and I believe the subset of that zoning was for manufacturing. That occurred in 1972. We don't know what factors the zoning body at Lewis Madison County actually zoned it. Consider it in that decision. And the General Assembly has said that it is up to the department, not the zoning body, to determine if a sign can go in to a particular location. So the zoning here isn't really relevant to whether or not the department's decision was clearly erroneous. And I think there's two ways to read the fact that the zoning occurred in 1972. It's true that in 1972, Madison County believed that it was proper to zone this land, but there has been no development on it. Well, there was no road in 1972. That could very well be true. Well, that's probably true. It is probably true, Your Honor, and there's still no road accessing that site today. And there's no reason now to believe that whatever zoning decision the zoning authority made in 1972, there's still no reason to believe that at this particular site, this part of the land, it's plausible that there will be commercial or industrial development. I'm interested in how you get it on one side of the road and not the other. What's the distinguishing characteristic? Well, Your Honor, I think that the primary distinguishing characteristic is that there actually is development on one side of the road. There's a building. Again, it's not entirely clear the extent of that development. But there could be differences between these two parcels of land. But it's your agency's decision to justify that decision. So can you tell me what kind of building is on the other side of the road? We cannot. You can't tell me that. You can't tell me what kind of industry is on the other side of the road? No, Your Honor. You can't tell me why there was a sign allowed on that side of the road and not this side of the road? No, Your Honor, but I think it's important to remember that MidAmerica applies for the sign. It's their burden. They make the record. There is no adversarial receipt. I understand, but you deny it because you don't see any industrial use other than for a sign. Yes, Your Honor. If MidAmerica believed that this development on the other side of the highway somehow, you know, if there was some reason to believe that that development was entirely possible on this side of the highway, they could have entered that evidence in the record. All the points that Your Honor just made, if the evidence about the development on the other side would have supported MidAmerica's application, they could have entered that into the record. All those questions about the infrastructure there, the type of development, and whether that exact development could occur over here at this exact site proposed by MidAmerica, those could have been developed in the record. There could have been a plan for development. There could have been something to indicate that this landlocked, isolated piece of land that has no other infrastructure could be developed for commercial or industrial use. I think, too, here we have to remember there's an Act that governs all of this, and the Act gives us very specific, the General Assembly's intent in granting authority to the Department to make these types of decisions. And here the Department's decision was entirely consistent with the Act's intent. Those purposes include promoting natural beauty, promoting recreational value of travel, and promoting reasonable, effective display of outdoor advertising. So here where you have a landlocked, pristine, untouched, undeveloped piece of land with no other infrastructure and no plan for any other infrastructure, no reason to believe that anyone's going to come in and even try to develop this land, then the Department's decision not only has record and support, but also is entirely consistent with the Act and the regulations that the Department had the authority to promulgate under the Act. So you think that driving down 255 with a sign on the left, let's say, and a building on the left, if we put a sign on the right and we require more buildings and more industry that we're keeping the land more pristine and more green and following the Act's intent? Well, Your Honor, I think that's precisely the point. There aren't other buildings. There aren't – we're not – the Department's decision here doesn't promote further development. They're saying, well, there is no other development. Let's keep it as it is. That's entirely consistent with the Act. But what you want is more development if you're going to put a sign up. I don't – I think it's the other way around. I think it's unless there's development, we don't want signs. It would be the more – that's really what the Act says. The Illinois Supreme Court set an outcome that the default here is no further building of signs along highways unless it fits one of these exceptions. The exceptions are developed in the Act, and then the Department has the authority to implement those exceptions. And it did so here. It used its authority. And the Supreme Court case is? Outcome. I'm sorry. It's cited in our brief. I can give you the cite, Your Honor. It is 233 ill seconds, 324. And there again, they really say the default is not to have further outdoor advertising unless it fits with one of these narrow exceptions. It really is narrow. I'm just concerned that you have one piece of land for tax purposes called a parcel. And then if you begin at the – let's just say the left side of the land, you have a building, you have a billboard, then you have Highway 255, and then you have this other piece of land, right? Yes, ma'am. So we're going along. It's all commercial. A highway is commercial, right? And then we have another zoned piece of the same parcel, but zoned commercial. And then we find, but as to this piece, it can't be used for anything but a sign, so we're going to deny the sign. How do you explain the splitting of that land? Well, I think there are a couple explanations. One is to look at the opposite conclusion this department could have reached or that this court might have reached, which is to say the department in this situation has to allow outdoor advertising. Now you have no limitation on these areas of development. You have on one side of the highway, you have some commercial development. You have some – again, we don't know quite the extent. And then you're saying that just because that exists here, now the department no longer has the discretion to say no further advertising here. We can't have limitations on the signs, the advertising that you're going to see when you drive along the highway. We're going to say once there's some development in this area, then that's it. The department can't do any more to limit it. And that's really not consistent with the purpose of the act. The purpose of the act is really to allow limited outdoor advertising. So the department's decision here is consistent with that purpose and it's consistent with the regulations and it's consistent with its authority granted under the act. Just briefly, Your Honor, I'm going to touch on the constitutional arguments. Again, as we said in our brief, these arguments were forfeited because they were never raised in the department. And America says they never had a chance to raise them because there was a final order that they couldn't challenge. But, of course, that's always the case in any administrative proceeding or any circuit court proceeding for that matter. There's eventually going to be a final order where the case ends and you move on to the next stage, either an appeal or an administrative review. Here, Mid-America issued first a notice of intent to deny. At that point, Mid-America could have raised any constitutional arguments they had. They did not. So we don't really have a record developed on those arguments for that reason. But anyway, forfeiture aside, both of these claims are America's. First of all, the term plausible used in this regulation is not vague. In fact, Mid-America gave us a reasonable definition for plausible in the circuit court. It said, using the dictionary, it said, plausible means appearing worthy of belief. I think that's a reasonable definition. It's entirely consistent with what the department did here. The department said there's no reason in the record to believe that industrial or commercial development is plausible at this site or is going to occur at this site. That wasn't worthy of belief. And the department's decision was not arbitrary. There's nothing in the record suggesting that they were using some skewed definition of the word plausible, and it's not a term of art that requires further definition. The First Amendment claim similarly fails. First of all, the claim doesn't challenge the regulation. It doesn't challenge the word plausible. It doesn't challenge the act. It's merely a challenge to the decision that the department made here, saying that that restricted Mid-America's free speech rights. The decision here is very narrow, they're saying. At one particular site, consistent with the act and with the department's own regulations, there was insufficient information and evidence to grant the permit. The government also has a very strong interest in maintaining public beauty and limiting outdoor advertising, and the decision here was closely related to that very important interest. For those reasons, the constitutional challenges fail as well. Your Honors, the department's decision here was consistent with the record, with the act, the regulations, and with the Constitution. For those reasons, the decision does not clearly arise. If there are no further questions, thank you very much. Thank you. I just have a few brief remarks, Your Honors. First, as to the forfeiture question, the cases that they rely on for saying that we waived our First Amendment rights or forfeited them are cases where the person who was going against the government agency actually got a hearing in the agency. The way administrative review works with the Department of Transportation, we get no hearings at that level. And essentially, they issued us something. We applied. They issued us something that said we're thinking about denying, we're not sure. We submitted further documentation, and then they gave us a final denial. The way they're interpreting waiver, I would have to conceive of all possible basis for denial and then raise First Amendment arguments against them before it's denied. When we got to the trial court, it was the first place that we had a denial on the record and we had a hearing. We raised our constitutional arguments. But returning to the main question at hand, the standards set forth in the statute, my opposing counsel talked a lot about there's no plan, didn't submit a plan. Well, they're superimposing our other triggers or other prongs of the statute against us. There are other prongs of the statute that require a plan. This basis just says the only plausible use is for a building. So we don't have to submit a plan. Secondly, he talked a lot about the goals of the statute, beautification, etc., etc., clean and pristine highways and land next to them. At the end of the day, those goals are defined by the statute itself. The statute sets out the balancing test for those goals and for billboards. And what does the statute say? It says for the denial to be proper, the only plausible use, the only plausible use for the land is for a building. They keep talking about the plausibility that there won't be commercial development there. But they're ignoring the word only. The word only is in front of that word. Certainly, I grant you that it is landlocked. There's not a building there now. No construction plan has been submitted now. Certainly, I grant you it is plausible that it won't be used commercially. But it is also plausible that it will be used commercially, given its commercial zoning, given the fact that there's a building on the other side of the highway, and given the evidence of the owner of the land saying we'll grant easements for commercial development. Both possibilities are plausible. Thus, you cannot say the only plausible use of the property or the land is a billboard. What about the state's argument that you carried the burden going into the hearing of showing that there were other factors, such as utility easements, road acquisitions? I do not believe that that is our burden. And if it is our burden, I believe that we carried the burden of showing that the basis for denial, that this is the only one that is an issue, is incorrect. It's clearly erroneous. It is not the case that the only plausible use of the property is a billboard. And I believe that the evidence that we submitted to the department shows that. And what should we look for in the record that shows that? Well, I think you should look at the zoning. I think you should look at the commercial development. I think you should look at the— I mean, these are things you submitted into the record? Yes. Yes. And I think you can look at—we submitted a—I'm trying to think of the right word. I'm not exactly a real estate attorney. I apologize. But we submitted, like, an overview of the site. I think it's some of the topography that shows that the land is uniform on both sides of the highway. It was already developed over here. It was suitable for development here, and it's suitable for development over there because it's a lot like that land. Those are the kind of things that we submitted, Your Honor. Well, it's 255. Is that a limited-access highway? Well, I don't know. When you say limited access, what do you mean? I mean, does it have frontage roads, or is there an easement for a frontage road? Oh, it has frontage roads. There are frontage roads. I believe there are—you see the roads to the side of 255? Okay, my question is, how can it be landlocked? Well— If you have a frontage road that runs through the property. I don't think there—I don't know that there's a frontage road on this particular piece. I'm sure of that. I believe the way this works is there's an exit off Highway 255 that takes you over to the commercial development over here, and then there's an easement that runs under the highway for the billboard and, I believe, for other— Utilities. I believe. But I would have to double-check the record on it, Your Honor. But I would still submit to you, even if that easement does not exist right now. I'm not worried about the easement. I'm worried about the access. Thank you, Your Honor. Thank you. I appreciate your time. Okay. This man will be taken under advisement, and we're going to go on— The decision will be rendered in due course. We're going to go on with the next case.